## Connelly v. C., N. O. & T. P. Ry. Co.

(Decided September 28, 1920.)

### Appeal from Kenton Circuit Court.

1. **Master and Servant—Railroads—Personal Injuries.**—Where a plaintiff in an action for personal injury predicates his right of recovery upon evidence that a given handrail came loose and caused him to fall, to his injury, and it is shown by all other evidence as well as by the handrail itself that it did not come loose but was substantially and firmly attached to the engine, the jury properly returned a verdict for the defendant company.

2.  Master and Servant—Safe Place to Work—Inspection.—It is not the duty of an employe working about the shops of a railroad company to inspect his place of employment before proceeding with his work, but it is the duty of the master to inspect such a place with such frequency as an ordinarily prudent person would deem necessary in order to keep the place reasonably safe; however, the servant is chargeable with such dangerous or defective condition of his working place as was so open and obvious that a reasonably prudent person would have observed the same, and an instruction which so states the law to a jury is not erroneous.

3.  Trial—Instructions.—Instructions to a jury should be direct, clear and concise but an instruction which correctly states the law applicable to the case though subject to the criticism of redundancy, circuity and tautology will not warrant this court on appeal in reversing the judgment.

WILLIAM A. BYRNE for appellant.

GALVIN & GALVIN for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On December 10, 1915, appellant Leo J. Connelly, while in the services of the appellee railway company, fell from an engine being repaired in the roundhouse, breaking his arm at the elbow, from which he suffered great and excruciating pain. Within a short time thereafter he commenced this action in the Kenton circuit court to recover $3,000.00 damages on account of his injury, loss of time and pain, all of which he alleged resulted directly and proximately from the failure of the defendant company to provide him a reasonably safe place in which to perform the work which he was set to do.

The railway company answered denying its negligence and pleading contributory negligence on the part of the plaintiff. A reply made up the issues. A trial was had in May, 1917, at which the jury failed to agree upon a verdict and were discharged. Another trial was had in November, 1917, resulting in a verdict for the defendant company. Connelly appeals, asking a reversal of the judgment upon three grounds: (1) The verdict is not sustained by sufficient evidence and is contrary to law; (2) the verdict is against the evidence; (3) error in giving instructions Nos. 1, 2, 3, 4, and J and B, and in refusing instruction Nos. "X, Y, and Z." In appellant's brief it is said his "claim for damages is based upon his allegations in his petition that he did not know and had no means of knowing that the handrail on said engine

would come loose if taken hold of; and that it was the duty of appellee to have same secure and safe for use by him for his work; that it had been loosened by a machinist under order of appellee's roundhouse foreman and negligently left in such dangerous and insecure condition that it would come out upon being taken hold of by any one ascending or descending from the engine.''

That appellant's contention may be clearly understood we will briefly state the facts: Connelly was engaged by the railroad company in its shops at Ludlow as a machinist's helper and lagger for some months before the accident of which he complains. He worked under a foreman named Teddy Boyd and an assistant foreman named Weller, in the roundhouse. A large engine No. 709 was in the shop for repair and before the repairs could be made an opening was necessary in the side of the boiler. A part of this work, removing the asbestos from between the inner and outer sheets of steel, is called lagging and was properly a part of the work of Connelly. He was called to perform this service on engine No. 709. While he was testifying he was asked:

''Q. I want you to tell the jury how and what you had to do, to do that job, to get to the place of work? A. Had to go up; I could have went over the front, but I come in the back door of the roundhouse. I went to the cab of the engine on the left side of the cab, up in the cab on the left side of the engine. I went up there and done the work. Q. The part you had to work at was inside the cab? A. No, sir; outside the cab. Q. How did you get to your place where the work was to be done? A. Went up on the left side of the engine through the cab, out the cab door. Q. Out the cab door? A. I don't believe I was all the way out; might as well have called it all the way out, one foot was sticking in there. Q. You are not sure about that? A. I ain't sure. . . . Q. Tell the jury what you had to do when you reached that position you have described, partly in the cab and partly out of it? A. I had to take down some asbestos; they come in five or six inches wide, I believe, I took down two or three of them. Q. Where did you take them down—where was it? A. On the outside of the cab, right there at the boiler. Q. What was it on? A. On the boiler. Q. Was it on the outside of the boiler, where was it? A. Sure, on the outside of the boiler. Q. Is asbestos on the outside of boilers? A. Sure, on the outside of the boiler, to keep the heat; there is a jacket goes over that. Q. Where was that jacket? A. The jacket was shoved—thrown over; the

jacket was raised up and throwed back like, I couldn't see nothing but the jacket.''

After testifying about how he did the work he said:

"I went out the window on the running board, out to the engine. There is an iron step right at the end of the running board. Q. Where is that on the engine? A. On the running board, at the end of the running board is an iron step. Just as I got to the end of the running board, I made my step, went to step down, I reached up to get hold of the handrail; when I reached up, down I went to the ground. I hit in position like that, that's the way I was lying there. Q. Describe the running board to these gentlemen? A. It is a running board on the outside of the boiler, where anybody that works on the outside of the cab—fireman or engineer or anbody that works on the outside of the engine, had to go upon to get in or out, or outside of that cab. Q. Describe the rail you speak of? A. There is a handrail that goes along on the boiler, supposed to be for people to get hold of. I didn't get hold of it until I got to the end, because I been used to going along them. I never dreamt of it being loose. . . . I fell to the ground, that is how I got off. Q. Tell what you did to get off? A. I got my foot there, getting ready to step down, I reached up to get hold of the handrail, I never knew nothing until I went to the ground. Q. Did you get hold of the handrailing? A. Brought it to the ground with me. Q. When the handrailing come to the ground with you, how was it with respect to the engine; was it all on the ground, or any part of it on the engine? A. The front part of it came to the ground with me. I do not know whether— Q. The part you had in your hand did it all come to the ground with you? A. It sure did. Q. Any part of the pieces you were holding on the engine, or was it all on the ground? A. There was one piece on the ground, then another piece up like that, hung down, and one sticking to the column up there. The other part down on the ground with me. Q. What did you do when you reached the ground? A. I laid there for a minute or two, then I got up, and went down to the assistant roundhouse foreman, Mr. Weller, and told him I got hurt. . . .''

There was no one present at the time of the accident except appellant, but as soon as he told Mr. Weller of his injury Mr. Weller and other persons about the shop came and examined the engine and found that the handrail which appellant testifies he took hold of and which caused his fall because it was loose, was not in fact loose nor

out of place but was securely fastened to the boiler in the regulation way. But at the rear end of the boiler next to the cab, some eight or ten feet from the steps at the front of the engine where appellant says he was descending, had been removed or shoved forward in order that the workmen might more easily get to their work of repairing the boiler; the handrailing was in two sections, each independent of the other, and the removal of the section of the handrailing some eight or ten feet along next to the cab, did not in any way affect the stability, strength or usefulness of the other section of the handrail next to the head or front of the engine. The employes of defendant company, including its assistant foreman in the shop, testified at the trial that the handrailing at the place where appellant claims he fell was not loose but was in its proper place and securely fastened immediately after appellant fell. This evidence was in direct contradiction of appellant's testimony with reference to the railing, and if the evidence of appellee company on this point was true, then appellant Connelly did not come to his injury in the way and manner detailed by him and he was not entitled to recover damages of the company.

Coming now to consider the three grounds urged for a reversal of the judgment by appellant, we may with convenience and propriety consider the first two: (1) The verdict is not sustained by sufficient evidence and is contrary to law; (2) the verdict is against the evidence, together, for they resolve themselves into one and the same thing. The verdict was for the defendant company and if the jury believed, as it had a right to, the evidence of the witnesses for the company, and disbelieved the evidence of the appellant, then the verdict was fully supported by the evidence and was not contrary to law. Nor was the verdict against the evidence as urged in the second ground. Of course, the jury would have returned a verdict for the appellant Connelly if it had believed his evidence, but the physical facts appear to have been against him and the jury must have concluded that the witnesses who testified that the handrailing on the engine at the point where Connelly says he fell and received his injury, was not loose and did not fall; and if it did believe this evidence it would not in justice to itself have returned a verdict for the appellant Connelly. As there was evidence on both sides of the question it was one for the determination of the jury and we are not authorized to disturb a verdict unless it be flagrantly against the evidence,

or appears to have been rendered under the influence of passion or prejudice, neither of which is true in this case.

(3) Complaint is made that the court in its instructions told the jury that it was the duty of the defendant company to inspcet the engine ''from time to time with such frequency as would be deemed by an ordinarily careful and prudent person reasonably necessary for that purpose,'' whereas, there was no evidence upon that subject. But inasmuch as appellant bases his right to recover partly upon the failure of the railway company to inspect its engine and keep and have the same in a reasonably safe condition, the instruction upon this point was proper, and if it were not it would not be prejudicial to appellant because the duty of inspecting the working place of appellant and of making it reasonably safe was rested upon appellee company, and the instructions correctly stated the law on this point. Whether there was an inspection by the railroad company of the handrailing or not is not important in this case because appellant claims that the bar was loose and fell with him when he took hold of it, while the company makes the contention that the handrail was not loose and did not fall with appellant at the time and place of which he complains, thus making a clear and certain issue of fact, which was submitted to the jury. It did not matter whether there had been an inspection of the handrail or not under the facts of this case; if it were insecure and fell with appellant Connelly he was entitled to recover, but if it was secure and did not fall with him as claimed in his evidence, then he was not entitled to a verdict.

The court told the jury in substance that it was the duty of the railway company to exercise ordinary care to provide and maintain its locomotive engine and equipment in a safe condition for use by its employes, and, to that end, it was the duty of the defendant to inspect said locomotive engine from time to time with such frequency as would be deemed by an ordinarily careful and prudent person reasonably necessary for that purpose, and the court further told the jury that it was the duty of Connelly to exercise ordinary care for his own protection and safety in and about the performance of his work; but that it was not his duty to inspect the locomotive engine to ascertain defects which were not obvious and apparent and which could not be ascertained by the use of such care as ordinarily careful and prudent persons engaged in the work to which plaintiff was assigned ordi-

narily exercise under similar circumstances. The jury, however, was instructed by the court that Connelly assumed the risks ordinarily incident to the work which he was employed to perform, and that he was chargeable with knowledge of such defects or dangers as could be ascertained by him with the exercise of ordinary care.

Following these definitions the court in effect instructed the jury that if it believed from the evidence that the handrail mentioned in the evidence came loose and fell when the plaintiff Connelly took hold of it in attempting to descend from the engine and that it was defectively or insecurely attached to its fastenings and that the railroad company knew, or by the exercise of ordinary care could have known of its loose and defective condition, and that the loose and defective condition of the handrail was the proximate cause of the injury of plaintiff, the verdict should be for the plaintiff Connelly, unless the jury believed from the evidence that Connelly failed to exercise ordinary care for his own protection and safety but for which failure contributing thereto the accident would not have happened and he would not have been injured, in which event the verdict should be for the defendant company.

A third instruction defining the measure of damages to which Connelly was entitled if the jury should find for him was given. Following this the usual definition of ordinary care was given in a fourth instruction.

Instruction "B," of which complaint is made, told the jury that its verdict could not be for Connelly unless the jury believed from the evidence that the injuries of which Connelly complained were the direct and proximate result of Connelly taking hold of the handrailing described in the proof and that said handrailing was defective and out of order and came loose when he took hold of it, and plaintiff Connelly did not know the defective condition of the handrailing, if the same was defective at the time he took hold of it.

Instruction "J" informed the jury that they could not find for the plaintiff Connelly even though they believed from the evidence that the defendant company failed to exercise ordinary care to provide a reasonably safe place for plaintiff in which to do his work, if the jury further believed that Connelly failed to exercise ordinary care for his own safety and the accident would not have happened to him but for his failure in this regard.

An instruction telling the jury that nine or more could make a verdict completed the instructions of the court.

We have carefully read and studied the instructions which the trial court gave to the jury and of which appellant complains and we are convinced that while they are objectionable, for redundancy and circuity, they stated the law of the case very fairly and plainly to the jury. It is urged by appellant that the instructions told the jury no less than seven times that it was the duty of appellant Connelly to exercise ordinary care for his own safety and that if he was guilty of negligence which contributed to bring about his injury he was not entitled to recover, and this complaint is not without foundation; but while this is in a measure true, the court also impressed upon the jury more than one time the necessity the railroad company was under of providing a reasonably safe place for the plaintiff to perform his duties and to have and keep the handrailing in a reasonably safe condition for plaintiff Connelly. The court might with fewer words and less repetition have stated the law on both sides of the case, but the redundancy and prolixity of which the court was guilty constituted but harmless errors in this case.

It is insisted that the instruction on contributory negligence is in effect repeated two or three times, and this complaint finds support in the record, but while the court in stating the law of contributory negligence more than one time committed error, it was not prejudicial to the rights of appellant, because the instructions were in substance the same though differently worded and were a clear statement of the principle governing cases where the defense is contributory negligence. An instruction should never be repeated even in substance, but we have never held that a mere imperfect, indictive, redundant or tautological instruction which was not ambigious, was such an error in an instruction to the jury as to warrant this court in reversing a judgment which was otherwise regular.

Appellant complains that the trial court refused to give three instructions Nos. "X, Y. Z." The first one "X" reads as follows:

"Plaintiff moves the court to instruct the jury that plaintiff had a right to presume the engine was in a safe condition with the handrail thereon for him to do his work and to ascend and descend from."

The first instruction given by the court expressly told the jury that it was not the duty of plaintiff Connelly to inspect said locomotive engine to ascertain defects which were not obvious or apparent and which could not be ascertained by the use of such care as an ordinarily careful and prudent person engaged in the work in which Connelly was engaged ordinarily exercise under similar circumstances, and this was a correct exposition of the principle of law involved. The offered instruction was too broad and general and did not correctly state the principle of law which the court was attempting to give the jury. Connelly was not entitled to presume at all hazards that the engine with the handrailing thereon was in a safe condition for him to do his work, but he was required, as set forth in instruction No. 1, given by the court, to exercise ordinary care for his own safety and he was chargeable with knowledge of such defects or dangers in and about his work as could be ascertained by "ordinarily careful and prudent persons, engaged in the work in which Connelly was engaged, by the exercise of such care as ordinarily careful and prudent persons ordinarily exercise under the same or similar circumstances."

Offered instruction "Y" is in substance the same as instruction "X," while offered instruction "Z" reads:

"Plaintiff could not be presumed to assume any risk but an obvious and glaring one, or such one as he could not help seeing."

This instruction goes entirely too far on the side of the plaintiff and does not correctly state the law. Connelly was chargeable with such defects in the machinery and about his place of work as were open and obvious, but was not entitled to ignore all such dangers as were not glaring, for the dictionary defines glaring as "bright, dazzling, barefaced, notorious;" and glare is defined as "clear, dazzling light, overpowering luster." Connelly was charged with knowledge of defects about the engine and his place of work which were so open and obvious that an ordinarily prudent person engaged in his line of work would have observed and no others.

The instructions were subject to criticism, but defects and imperfections with which they are chargeable are not such as go to the merit and substance of appellant's rights, and it is inconceivable that instructions which otherwise so clearly and plainly present the law of the case, though circuitous, redundant and subject to

criticism for tautology, were so misleading to the jury as to prejudice appellant.

Perceiving no error to the prejudice of appellant, the judgment is affirmed.

Judgment affirmed.